UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EMILIO DIAZ COLON

    Plaintiffs

    v.                           CIVIL NO. 97-2539 (JAG)

UNITED STATES OF AMERICA

    Defendants

## OPINION AND ORDER

This is a medical malpractice suit brought against defendant United States of America ("USA") pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.). Plaintiff Emilio Díaz Colón ("Díaz Colón") claims that he suffered permanent damages in his left ankle due to the medical malpractice of the Veterans Administration Medical Center ("VA"), in not properly diagnosing and treating a neck talus fracture. All administrative procedures were exhausted. The case was tried without a jury on February 6, 2001. Upon conclusion of the trial, we ordered the parties to submit Post-Trial Briefs. USA expeditiously complied with the Court order, Díaz Colón, however, never did. Upon due consideration of the testimonial and documentary evidence presented at trial, and pursuant to Federal Rule of Civil Procedure 52(a), we make the following Findings of Fact and Conclusions of Law.



AO 72A
(Rev.8/82)

## FINDINGS OF FACT

On December 5, 1994, Díaz Colón suffered a neck talus fracture in the left ankle as a result of a fall from an eight-foot ladder at his home. He went to the VA to get treatment. Upon his arrival the examining physician took x-rays of Díaz Colón's ankle and after examining the x-rays told him that he had a contusion and that he could go home.

On December 8, 1994, Díaz Colón went back to the Hospital because his ankle got more swollen. This time an orthopedist reviewed the x-rays and found a neck talus fracture. He was admitted to the hospital until December 15, 1994, when a full cast was placed on his leg. On December 13, 1994, Díaz Colón was cleared to proceed with an open reduction surgery but, because of his heart condition, he decided not to go ahead with the surgery. This surgical procedure is safe, and had Díaz Colón not declined it, the healing of his fracture could have improved. On December 15, 1994, Díaz Colón was discharged from the VA Hospital and advised to continue leg elevation.

On December 23, 1994, a short leg cast was placed on him for three weeks and he was thoroughly instructed not to bear weight on the ankle. Díaz Colón, however, continuously disregarded these instructions. On March 20, 1995, the cast was removed. Díaz Colón has not continued further orthopedic treatment.

The medical evidence credited by the Court established that

Díaz Colón's medical condition due to the fall was not aggravated from December 5, 1994 through December 10, 1994 after his initial visit to the VA and thereafter when he admitted upon discovery of the neck talus fracture. It is undisputed that the treatment given by VA from December 10, 1994 onwards was excellent.

## CONCLUSIONS OF LAW

Under the Federal Tort Claims Act, the Government is liable in damages to an injured party for injuries arising from a negligent act or omission of its employees, if a private person would be liable under the law of the place where the act or omission occurred. See 28 U.S.C. § 1346(b); United States v. Orleans, 425 U.S. 807, 813 (1976). Whether the United States is liable for the negligence of its employees is a question of state law. See 28 U.S.C. §§ 1346(b), 2674; Shuman v. United States, 765 F.2d 283, 288 (1st. Cir. 1985). The statute that governs the liability of a physician in a medical malpractice suit is Article 1802 of the Puerto Rico Civil Code. See 31 L.P.R.A. § 5141; Vda. de Lopez v. ELA, 104 DPR 178, 183 (1975); Acha v. Nevarez, 59 P.R.R. 235, 242 (1941).

The legal standard for evaluating medical malpractice cases in Puerto Rico is whether or not the doctor acted in accordance with the generally accepted standards of care of the medical profession. See Wilson v. U.S. Government, 699 F.Supp. 20, 23 (1988). This requirement imposes on the plaintiff a more onerous burden in a

medical malpractice case than in an ordinary tort case, since the physician's duty is dependent upon the applicable national standard of care. See Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 (1st Cir.1993); Oliveras v. Abreu, 101 DPR 209, 226 (1973). Furthermore, "there exists always a presumption that the treating physicians have observed a reasonable degree of care . . . in the process of giving medical attention and treatment." See Rolon, 1 F.3d at 77 (citing Del Valle v. US, 630 F.Supp. 750, 756 (1986)); Reyes v. Phoenix Assurance Co., 100 DPR 871, 876 (1971). Accordingly, this Court must determine whether or not the level or quality of medical attention in this case fulfilled the professional requirements generally accepted by the medical profession. See Del Valle Rivera v. US, 630 F.Supp. at 756.

We must decide whether Díaz Colón offered adequate proof to establish that the medical personnel at the VA failed to follow the standard of care in treating the neck talus fracture. Furthermore, we must resolve whether Díaz Colón demonstrated, by preponderance of the evidence, that the alleged negligence of the initial treating physician was the main probable cause of his damages. See Lama v. Borras, 16 F.3d 473, 478 (1st Cir.1994); Rodriguez Crespo v. Hernandez, 121 D.P.R. 639, 650 (1988); Rosado Rosado v. E.L.A., 108 D.P.R. 789, 792 (1979).

In cases of medical malpractice what is or is not the proper practice is a question for experts and it can be established only by

their testimony. See Guzman v. Silen, 86 D.P.R. 504 (1962). Dr. Cándido Martínez ("Dr. Martínez"), physiatrist, was Díaz Colón's expert witness. USA objected to his testimony as an expert witness insofar as he had only seen two or three talus fractures and had never seen nor treated any neck talus fractures. This Court decided not to penalize Díaz Colón for its surprisingly inadequate selection of an expert witness. Due to Dr. Martínez's limited experience in the field at issue here, however, the Court accorded little weight to his expert testimony.

Dr. Martínez stated that because of the initial diagnosis, Díaz Colón beared weight on his ankle during the first five days after the accident. As a result Díaz Colón suffered from a more severe case of post-traumatic arthritis. Nevertheless, on cross-examination, Dr. Martínez admitted that the post-traumatic arthritis was inevitable, that the immediate cause of Díaz Colón's fracture was the fall he sustained, that the prognosis of this type of fracture was poor, and that the consecutive reduction treatment Díaz Colón received was excellent. Dr. Martínez also admitted that Díaz Colón's fracture reunited and that his testimony was speculative because Díaz Colón's condition could have been the same with or without the weight bearing. Hence, even assuming, as Díaz Colón alleges, that the initial treating physician failed to properly diagnose the condition, the five-day waiting period for final diagnosis did not cause Díaz Colón's permanent damages.

5

Accordingly, we conclude that Díaz Colón failed to show, within a reasonable degree of medical certainty, that the damages suffered were proximately caused or aggravated by the delay in the diagnosis of the neck talus fracture.

Dr. Carlos Grovas ("Dr. Grovas"), USA's expert witness in surgical orthopedics, who has operated more than 200 neck talus fractures, testified that 10 to 14 days is a reasonable period to treat a neck talus fracture and that he saw no changes in Díaz Colón's x-rays from the day of the accident to January 2000. Dr. Grovas stated that, besides surgery, the correct treatment was what Díaz Colón received. He testified that the conservative reduction performed by the VA was done according to standard operating procedure and that there was no relation between the five-day waiting period for final diagnosis and Díaz Colón's prognosis.

Regarding the issue of whether the neck talus fracture was negligently treated, Dr. Grovas stated that even if the reduction had taken place on the day of the accident, the results would have been the same. His rationale for this opinion was, that it was impossible to properly reduce the fracture without surgery, and that surgery during the first week was not possible because the foot was swollen. Both experts agreed that failure to diagnose the condition the day of the accident did not affect the chances of performing an open reduction treatment. Dr. Grovas further testified that open reduction treatment usually has fair to poor results specially at

6

Díaz Colón's age and that despite the fact that Díaz Colón refused surgery, Díaz Colón was doing exceptionably well.

We find Dr. Grovas to be an eminently qualified board-certified orthopedist with sterling credentials, and his testimony to be very credible and persuasive, particularly when compared with that of Dr. Martínez's. Accordingly, we conclude, on the weight of the evidence and expert testimony, that there was no causal connection between the five-day waiting period for final diagnosis and Díaz Colón's permanent damages, and that the VA is not liable for negligence to Díaz Colón.

This action is, therefore, **DISMISSED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of November 2001.

_____
JAY A. GARCIA-GREGORY
United States District Judge

AO 72A
(Rev.8/82)